TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
JENNA W. LONG (Cal. Bar No. 332192)
Assistant United States Attorney
National Security Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8692
     Facsimile: (213) 894-2927
     Email:     Jenna.Long@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-731(A)-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO SEVER AND FOR RELIEF FROM IMPROPER JOINDER UNDER FED. R. CRIM. P. 8(B), 12(B)(3)(B)(IV), 14(A) (DKT. NOS. 193-196); DECLARATION OF JENNA W. LONG; EXHIBIT A |
| v. | |
| ADAM CHARLES PALERMO, ET AL., | |
| Defendant. | |
| | Hearing Date: April 20, 2026 |
| | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jenna W. Long, hereby files its opposition to defendants' Motions to Sever and for relief from Improper Joinder Under Fed. R. Crim. P. 8(b), 12(b)(3)(B)(iv), 14(a) (Dkt. Nos. 193-196).

//

//

This opposition is based upon the attached memorandum of points and authorities, the declaration of Jenna W. Long and exhibit A attached hereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 20, 2026                Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

           /s/ *Jenna W. Long*
JENNA W. LONG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF CONTENTS.......................................................i

TABLE OF AUTHORITIES....................................................ii

TABLE OF EXHIBITS......................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.    INTRODUCTION......................................................1

II.   STATEMENT OF FACTS...............................................1

III.  LEGAL STANDARD...................................................8

      A.    The Rules Favor Joinder...................................8

      B.    Requests for Severance Face a High Burden.................9

IV.   ARGUMENT........................................................10

V.    CONCLUSION......................................................17

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                    PAGE

**CASES**

Richardson v. Marsh,
        481 U.S. 200 (1987)..........................................17

United States v. Armstrong,
        621 F.2d 951 (9th Cir. 1980)..................................9

United States v. Baker,
        10 F.3d 1374 (9th Cir.1993)...................................8

United States v. De Bright,
        730 F.2d 1255 (9th Cir.1984) (en banc)........................9

United States v. Escalante,
        637 F.2d 1197 (9th Cir. 1980)............................10, 17

United States v. Fernandez,
        388 F.3d 1199 (9th Cir. 2004)................................16

United States v. Ford,
        632 F.2d 1354 (9th Cir.1980)..................................9

United States v. Hall,
        473 F.3d 1295 (10th Cir. 2007)...............................16

United States v. Jenkins,
        633 F.3d 788 (9th Cir. 2011).................................10

United States v. Jenkins,
        785 F.2d 1387 (9th Cir. 1986)................................16

United States v. Kenny,
        645 F.2d 1323 (9th Cir. 1981)................................10

United States v. Kinslow,
        860 F.2d 963 (9th Cir. 1988)..................................9

United States v. Lane,
        474 U.S. 438 (1986)...........................................8

United States v. Mikhel,
        889 F.3d 1003 (9th Cir. 2018)................................10

United States v. Polizzi,
        801 F.2d 1543 (9th Cir. 1986)................................10

United States v. Randazzo,
        80 F.3d 623 (1st Cir. 1996)...................................9

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Richardson,
        161 F.3d 728 (D.C. Cir. 1998)......................................9

United States v. Sarkisian,
        197 F.3d 966 (9th Cir. 1999)......................................9

United States v. Vaccaro,
        816 F.2d 443 (9th Cir. 1987), abrogated on other grounds by
        Huddleston v. United States, 485 U.S. 681 (1988)..............10

United States v. Vasquez-Velasco,
        15 F.3d 833 (9th Cir. 1994)........................9, 11, 13, 16

Zafiro v. United States,
        506 U.S. 534 (1993).........................................17

**STATUTES**

18 U.S.C. § 2.........................................................8

18 U.S.C. § 231.................................................8, 11, 12

18 U.S.C. § 232.................................................1, 12

18 U.S.C. § 844................................................iv, 8

**RULES**

Fed. R. Crim. P. 14...........................................8, 9, 16

Fed. R. Crim. P. 8............................................8, 9, 11

**TABLE OF EXHIBITS**

| Exhibit | Description | Pages and Lines Cited |
|---------|-------------|----------------------|
| A | Complaint filed in 2:25-MJ-3633 charging defendant Adam Charles Palermo with violating 18 U.S.C. § 844(i), appearing at docket entry number 1, dated June 13, 2025 | Pg. 3, lines 3-8; Pgs. 7-8, n. 3; Pg. 14, lines 19-27 |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.   INTRODUCTION**

The nine defendants charged jointly in the First Superseding Indictment in this case move the Court to grant severance and hold nine, largely duplicative trials.  Each of the nine defendants were within a violent crowd that targeted California Highway Patrol Officers trying to quell the disruption of protest activity on the United States Highway 101.  Within 90 minutes of this civil disorder, often within moments of each other, all the charged conduct occurred.  There is a logical relationship between this series of acts of transactions, underscored by the overlapping and duplicative nature of the evidence each defendant faces.

**II.   STATEMENT OF FACTS**

In early June 2025, federal law enforcement officials began conducting immigration enforcement operations throughout the Los Angeles, California area.  (Complaint filed in 2:25-MJ-6126-DUTY, Dkt. No. 1, also appearing at Dkt. No. 155-2, ¶¶ 4, 9.)  During and following those operations, protests occurred in and around downtown Los Angeles, California.  (<u>Id.</u>)  While many of the protestors peacefully exercised their First Amendment rights, some individuals directly engaged in violent actions to obstruct, impede, or interfere with law enforcement officers.  (<u>Id.</u> ¶¶ 4, 9-11.)  Many of those actions occurred during a civil disorder as defined by 18 U.S.C. § 232(1), and obstructed, delayed, and adversely obstructed commerce, the movement of articles and commodities in commerce on June 8, 2025, in the vicinity of the United States Highway 101 Main Street overpass.  (<u>Id.</u> ¶ 12.)  During this, multiple California Highway

1

Patrol ("CHP") vehicles were damaged by rocks, scooters, and lit on fire, while CHP officers had to remain under the overpass for safety. (Id.)  The below photograph depicts this civil disorder.



(Dkt. 155-2 ¶ 12.)

The government has produced a voluminous amount of discovery, largely in the form of video surveillance of this civil disorder from different angles.  (See Dkt. No. 161-1 ¶ 5; Dkt. No. 192 ¶ 9(a).) Specifically, there are multiple angles of video surveillance footage from law enforcement or surrounding buildings that capture the charged offenses.  (Declaration of Jenna W. Long ("Long Decl.") ¶ 2.) All of these video files provide overlapping views of the same area -- the immediate vicinity of the Main Street overpass.  (Id.)  In addition to video surveillance, there are two video files that were streamed on a website during the civil disorder.  (Id.)  These live-streamed videos appear to be recorded by individuals present and therefore, distinct from the surveillance footage are not static, and rather include events before, after, and blocks away from the incident at the Main Street overpass.  (Id.)  Some defendants are recognizable in this broader footage as well.  (Id.)

As evidenced by the video, this civil disorder encompassing the charged conduct -- at a single overpass of the United States Highway 101 -- was distinct in time and location.  A large crowd formed, from within this crowd several people launched violent attacks at the California Highway Patrol Officers and their vehicles, defendants committed acts either on the overpass or on the street adjacent to the overpass, aimed at the officers under the overpass or the exposed vehicles.  (See Complaint filed in 2:25-MJ-3633-DUTY, Dkt. No. 1, ¶¶ 6, 11-15, attached hereto as Exhibit A; Dkt. No. 155-2.)

The charged conduct all occurred within approximately 90 minutes, the vast majority of which was in a much smaller window, all aimed at or on this same single overpass.  The below chart gives a non-exhaustive overview of proximity of defendants' conduct to one another that the government would anticipate as evidence at trial.

| Time (Appx.) | Defendant | Location[1] | Description |
|---|---|---|---|
| 6:35 p.m. – 6:45 p.m. | Ramos | Aliso Street | Throwing multiple objects within a few minutes |
| 6:40 p.m. – 6:50 p.m. | Gonzalez-Hernandez, Jr. | Aliso Street | Throws several objects |
| 6:50 p.m. to 7:45 p.m. | Palermo | Overpass and Aliso Street | Throwing rocks repeatedly, then lighting and throwing lit debris repeatedly |
| 6:35 p.m. to 7:10 p.m. | Montion | Overpass and Aliso Street earlier | Repeatedly throwing rocks |
| 7:20 p.m. to 7:30 p.m. | Coreas | Overpass, seen on Aliso Street earlier | Throwing rocks on overpass |

---

[1] In this chart, "Overpass" refers to the Main Street overpass of the Unites States Highway 101.  "Aliso Street" refers to the block of Aliso Street north of and adjacent to the Overpass.

3

| 7:20 p.m. to 7:30 p.m. | Roldan | Overpass, seen on Aliso Street earlier | Throwing rocks on overpass, helping throw a scooter over |
|---|---|---|---|
| 7:20 p.m. to 7:30 p.m. | Green | Overpass | Threw rock on overpass, seen with more rocks at railing, helping throw a sign over |
| 7:40 p.m. to 8:05 p.m. | Vega | Overpass | Assisting lighting debris and other things on fire, threw lit debris |
| 7:50 p.m. to 8:00 p.m. | Flores | Overpass | Poured two bottles of liquid on CHP vehicle on fire from lit debris, threw scooter |

(See Long Decl. ¶ 4.)

On more than one occasion, multiple defendants are in the same short segments of video footage, even the same video still image.  In fact, sometimes multiple defendants are acting in ways engaged with or impactful of the conduct of other defendants.  For example, within a few seconds, you see someone believed to be defendant VEGA[2] approach the individual believed to be defendant PALERMO from behind while PALERMO is holding lit debris and he tosses it over the railing.  The two – defendants VEGA and PALERMO are then bent over in a circle of people, around debris being lit by others.  The below two still images from video surveillance show when defendant VEGA approaches defendant PALERMO and the second is after defendant PALERMO threw some lit debris over the railing, when both defendants VEGA and PALERMO are within a circle of people around debris, like cardboard, that is lit and thrown at different times.  (Long Decl.

---

[2] Throughout, defendants are referred to by their last name, in all capital letters when within the body of text.

4

¶ 4.)  As shown by the time stamps, this segment (which is an example of what several exhibits at trial will likely be like) show these two defendants' actions in less than 30 seconds.





Less than five minutes later, after PALERMO has tossed more lit debris, VEGA picks up cardboard from the same area he and PALERMO and others had been bent over lighting things, and repeatedly returns to the same area of the railing.  (Id.)  This is the same railing, just a few feet along, defendant VEGA throws lit cardboard over.  (Id.; Dkt. No. 155-2 ¶ 23.)

//

//

5

Approximately 10 minutes later, feet away from that location, VEGA was next to and gesturing (pointing) as FLORES poured a liquid on the fire on the hood of a vehicle causing the fire to immediately grow, robustly. (Dkt. No. 155-2 ¶ 22.) The below picture is a still image showing a moment close in time. (Id.)



Within twenty minutes or so before lit debris was thrown, GREEN, MONTION, ROLDAN, and COREAS were all around and behind the sign of the overpass, each throwing at least one rock over the railing towards the vehicles and officers below. (Dkt. No. 155-2 ¶¶ 15, 16, 18, 21.) In fact, in one of the streamed videos, defendant GREEN is seen bracing the leg of an unidentified individual throwing a sign over the overpass at the vehicles below, shortly after he threw a large rock over himself. (Long Decl. ¶ 5.) After the sign was thrown, another unidentified individual present made a comment, something to the effect of it would have been better if a car had been passing by while defendant PALERMO is nearby. (Id.) Then, approximately 10 minutes later, defendant PALERMO threw a large rock at the windshield of a passing by CHP vehicle that was attempting to get to a safe place. (Id.) The video files often overlap not only

6

in physical presence of defendants but in providing context to other defendants' actions, like the above example.

Some footage, before and after the charged conduct, in these same video files, but at other areas (within a couple blocks), while not charged conduct, helps identify defendants in the footage that shows their conduct at the overpass. (Long Decl. ¶ 2.) The government anticipates that a substantial portion of evidence of defendants' conduct is all derived from these same limited video files, only portions of which will be shown to the jury. (Long Decl. ¶ 7.) Many segments that the government anticipates using at trial will show more than one charged defendant. Then, the remaining identification evidence, which is (except for COREAS and ROLDAN)[3] largely individual, is not time consuming and some relies on the jury's own observations or comparing photographs.

As demonstrated by the chart above, defendants' conduct was limited in vicinity and time. Seven of the nine defendants were all seen on the overpass within 20 to 30 minutes of each other, often far closer in time than that. Defendants were individuals within a larger crowd that video evidence shows countless interactions amongst its members and regular instances of these individuals acting in concert.

Each of the defendants have been charged[4] for their actions in this civil disorder around the Main Street overpass against

---

[3] COREAS and ROLDAN were arrested a few blocks away later in the night by the Los Angeles Police Department (along with the separately indicted individual Elmore Cage). (Dkt. No. 155-2 ¶ 26.) And a photograph from ROLDAN's phone appears to show ROLDAN and COREAS posing on the Overpass earlier that day. (Id.)

[4] On June 13, 2025, defendant PALERMO was charged by complaint in 2:25-MJ-3633. (Ex A.) On October 2, 2025, the other defendants
*(footnote cont'd on next page)*

California Highway Patrol within a discrete period of time. Specifically, in the First Superseding Indictment (Dkt. No. 106), each defendant is charged with Obstructing, Impeding, and Interfering with Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231 (a)(3).  In addition, three defendants -- PALERMO, VEGA, and FLORES, are charged with Attempted Arson, in violation of 18 U.S.C. § 844(f) and (i).  Each count charges defendants with the substantive offense as well as aiding and abetting the same under 18 U.S.C. § 2(a).  (Id.)

On March 2, 2026, all defendants jointly filed a motion to sever each defendant and for relief from improper joinder, citing Rule 8(b).  (Dkt. No. 193.)  The same day, defendants COREAS, RAMOS, and GREEN, additionally filed motions to sever citing Rule 14(a), claiming prejudice from the conduct of co-defendants being relatively more serious or the bulk of the evidence.  (Dkt. Nos. 194, 195, 196.)

**III. LEGAL STANDARD**

### A.    The Rules Favor Joinder

The overarching principles behind Rule 8 favor joinder.  See United States v. Baker, 10 F.3d 1374, 1387 (9th Cir.1993) (as amended).  Rule 8 "accommodates" various interests including economy of resources, diminishing inconvenience to authorities and witnesses and to avoid trial delays.  See United States v. Lane, 474 U.S. 438, 449 (1986). The Ninth Circuit has held that joinder "is the rule rather than the exception," a denial of severance will only be overturned if the defendant shows that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial

_____

(and a separately-indicted individual) were charged by complaint in 2:25-MJ-6126.  All nine are charged in the First Superseding Indictment.  (Dkt. No. 106.)

8

economy and compelled exercise of the court's discretion to sever." United States v. Armstrong, 621 F.2d 951, 953 (9th Cir. 1980) (cleaned up) (emphasis added).  Indeed, Courts of Appeals have held that Rule 8 has generally been construed liberally in favor of joinder.  See, e.g., United States v. Sarkisian, 197 F.3d 966 (9th Cir. 1999); United States v. Richardson, 161 F.3d 728, 733 (D.C. Cir. 1998); United States v. Randazzo, 80 F.3d 623, 627 (1st Cir. 1996).

Under Rule 8(b), multiple defendants are properly joined if they "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions . . . ."  Fed. R. Crim. P. 8(b).  What is a "transaction" is "flexible," in the Ninth Circuit's opinion, and what constitutes a "series," "depends upon the degree to which the events are related."  United States v. Ford, 632 F.2d 1354, 1371-72 (9th Cir.1980) (citations omitted), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).  It "may comprehend a series of related occurrences."  United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988).  At base, the Court must inquire if there is a "logical relationship."  Id.  Such "logical relationship" may be that "the common activity constitutes a substantial portion of the proof of the joined charges."  Ford, 632 F.2d at 1371-72 (quoting United States v. Vasquez-Velasco, 15 F.3d 833, 844 (9th Cir. 1994)) (quotations omitted).

**B.   Requests for Severance Face a High Burden**

Rule 14 "sets a high standard" and requires severance only when a defendant demonstrates a "clear, manifest, or undue prejudice" of "such a magnitude that defendant is denied a fair trial."  Vasquez-Velasco, 15 F.3d at 845 (cleaned up).  Because of the presumption

that defendants charged together should be jointly tried, defendants bear the burden of making a "strong showing" to justify severance. United States v. Kenny, 645 F.2d 1323, 1345 (9th Cir. 1981). A defendant is not entitled to a separate trial unless he or she demonstrates that a joint trial would violate one of her substantive rights, such as confrontation of witnesses, presenting a legally permissible individual defense, and being tried by a properly instructed jury. United States v. Escalante, 637 F.2d 1197, 1202 (9th Cir. 1980). The possibility of acquittal at a separate trial is not a legitimate reason to sever the trials. United States v. Jenkins, 633 F.3d 788, 807 (9th Cir. 2011). As the Ninth Circuit has noted, "[s]ince some prejudice is inherent in any joinder of defendants, if only 'some' prejudice is all that need be shown, few, if any, multiple defendant trials could be held." United States v. Vaccaro, 816 F.2d 443, 448 (9th Cir. 1987), abrogated on other grounds by Huddleston v. United States, 485 U.S. 681 (1988).

As the arbiters of judicial resources, trial courts have wide discretion to hold joint trials. United States v. Mikhel, 889 F.3d 1003, 1046 (9th Cir. 2018). That discretion is only abused when "a joint trial [is] so manifestly prejudicial as to require the . . . exercise [of] discretion in but one way, by ordering a separate trial." Id. at 1047 (quotation omitted). This Court's discretion also allows it to give "serious consideration" to judicial economy. United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir. 1986).

## IV.    ARGUMENT

The logical relationship between defendants' conduct is plain from Count 7. Each defendant was part of the same violent crowd that attacked the same California Highway Patrol officers or vehicles, at

10

the same time, motivated by common purpose.  And each defendant directly acted, attempted to act, or aided or abetted the actions of others.  The requirement under Rule 8(b) that joined defendants engage in the same transaction, or series, of acts or transactions is satisfied because all the charged conduct was within this one incident, acts fueled by one another, evinced of a large group acting with common purpose.  The civil disorder that defendants acted within is arguably a transaction given the flexible definition.  But certainly, the many violent acts within that discrete incident would constitute a series of acts of transactions contemplated by the Rule. There is no requirement that defendants knew each other in advance, nor is there any requirement that there be a pre-existing agreement. In fact, if the law required a conspiracy in order to hold a joint trial, the Rule would have been written drastically differently.

Separate from the logical relationship of these series of acts, were the Court to grant defendants' request for severance -- the Court would then be audience to several highly duplicative trials, repeating many of the same witnesses (officers present) and evidence, down to the same video segments as exhibits and conduct highlighted of co-defendants even if tried separately.  Only very discrete portions, the evidence of which is otherwise succinct, would be unique between the trials.

As was true in Vasquez-Velasco, here, the government must prove multiple things across all defendants, the primary (but not only reason) the body of proof is substantially similar.  15 F.3d at 844. Every defendant is charged in count seven with Obstructing, Impeding, and Interfering with Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).  (Dkt. No. 106.)  All charged

conduct is from a singular civil disorder and was aimed at the same group of law enforcement at the same time.

First, to prove this the government must prove that a civil disorder existed at that time and location, which requires the government to prove violent acts of an assemblage of people risking damage or injury.  See 18 U.S.C. § 232(1).  This means violent acts by any charged defendant, and the acts of uncharged others, are evidence establishing this element -- so any evidence as to this element applies to all defendants and would be repeated in separate trials.  For example, defendants RAMOS and GONZALEZ-HERNANDEZ, JR. whose conduct occurs a few minutes earlier than others' establish the civil disorder that existed when everyone else also acted.  Second, the government must show that the civil disorder (not a specific defendant's actions) in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.  18 U.S.C. § 231(a)(3).  Must like the interstate commerce element in Vasquez-Velasco, again, proof the government offers would repeat for each defendant's trial, even if done separately.  Third, the government must prove that law enforcement officers were engaged in "the lawful performance of [] official duties incident to and during the commission of a civil disorder" and that these law enforcements officers were the target of defendants. For a third time, the government's evidence would be duplicated in separate trials.  The California Highway Patrol officers trapped under the overpass were the law enforcement engaged in their lawful duties that were the target of each defendant's acts and attempts -- there is no contention that other law enforcement was present or

targeted by these charged defendants. These elements and duplicative proof are directly comparable to proving a cartel existed, that it engaged in acts affecting interstate commerce, and that defendants participated in acts to further their positions relative to that cartel that satisfied the Ninth Circuit before. Vasquez-Velasco, 15 F.3d at 844.

Not only is evidence of co-defendants' conduct directly relevant to an element -- proving the existence of a civil disorder -- the context it offers can be evidence of other defendants' intent. For example, there is a substantial difference between pouring a liquid down on a vehicle and pouring that liquid down on a vehicle that two co-defendants had in preceding minutes threw burning debris down on -- one of which was still at the same railing still engaged in the crowd, pointing (directing) defendant FLORES. Context is critical to understanding defendants' intent behind their actions. Acting in concert with a crowd that coalesced around a common purpose and target is evidence of one's intent. An individual can act in concert implicitly and without a conspiracy or prior relationship. This is something often seen when a crowd becomes violent.

The conduct and speech of others in a crowd aiding and abetting each other similarly evinces intent of each defendant. A concrete example of this is when defendant GREEN helps someone throw a sign post over the overpass, a bystander's comment seemingly inspired defendant PALERMO's actions minutes later when he executed the idea defendant GREEN's conduct inspired -- namely throwing an object timed to when a vehicle was passing by. (See Long Decl. ¶ 5.)

Of course, as is true with every joint trial, some evidence is unique. The government must prove that each defendant committed or

13

attempted to commit an act, or aided and abetted another.  A defendant's mere presence would not satisfy this.  The requirement that government show each defendant's own actions to establish their guilt obviates the claims of unfair prejudice or fear that a defendant may only be found guilty by association.  This Court will undoubtedly clearly instruct the jury that each defendant must be considered separately and of the government's burden on each element.  Importantly, even acts that were more independent (involving only one defendant) frequently occurred so close in time to each others' they will naturally be included in the segments played from different angles during trial.

The other unique category of evidence for each defendant would come into evidence efficiently without wasting Court time -- identifying defendants.  The government will likely use a series of photographs of defendants faces, tattoos, and builds.  Even these photographs will be amongst a series that will be authenticated by overlapping witnesses or even when a separate witness is necessary, if no stipulation is reached as to the photographs' authenticity, the witness testimony will be short.  Evidence of identity is not complicated, as evidenced by how the identifications were explained in the complaints.  (See Dkt. No. 155-2 ¶¶ 25-43; Ex. A ¶¶ 17-18.)  Even when social media evidence is part of the body of proof of identification, like, for example, defendant PALERMO (see Ex. A ¶¶ 17-18), the evidence is still not cumbersome to authenticate, as it was even seen through open source and publicly available, and shows defendant PALERMO's face in similar articles of clothing, commenting on the same civil disorder.  (Id.)

14

Judicial economy is well served by a joint trial.  A joint trial would avoid the repetitive introduction of the proof of the civil disorder, its affect on commerce or a federally protected activity, and the lawful engagement of the targeted California Highway Patrol. Further, in separate trials exhibits would be repeated and even if a defendant may be in fewer overlapping video segments the witnesses introducing the exhibits would be the same.

Defendants' reliance on the Court's declination to transfer another case is misplaced.  See Dkt. No. 193-1.  To the contrary, it supports the government's position.  In that case, a defendant was charged with the same charge, but distinct from the incident charged in the instant case.  The relevant law enforcement officers were Los Angeles Police Department not California Highway Patrol, because that charged conduct occurred hours later a few blocks north after the civil disorder described above.  Importantly, in that incident, only two of the defendants charged in the instant indictment (ROLDAN and COREAS) were present near in time or potentially relevant to the separately-charged defendant's conduct (as the three were arrested later on June 8, 2025).  (See Dkt. No. 155-2 ¶ 26(a).)  The distance -- temporal and proximal -- is evinced by picture of the separately-charged defendant, which is later at night, and not on the Overpass. See Dkt. No. 155-2 ¶ 17.)  As the Court noted in its declination, "if truly related," then "the Government would have included [that defendant] in the First Superseding Indictment."  (Dkt. No. 193-1 at 3.)  That is precisely why the government did include these related incidents in one Superseding Indictment.

Defendants COREAS, GREEN, and ROLDAN have not demonstrated actual prejudice, nonetheless satisfied the "heavy" or "difficult"

15

burden they must in order to attain severance under Rule 14(a).  See United States v. Hall, 473 F.3d 1295, 1302 (10th Cir. 2007); United States v. Jenkins, 785 F.2d 1387, 1392 (9th Cir. 1986).  No defendant has identified a mutually antagonistic defense.  (See Dkt. Nos. 194, 195, 196.)  Generally, these defendants claim prejudice because co-defendants are charged with damaging vehicles by fire unrelated to these defendants' actions.  (See, e.g., Dkt. No. 194 at 5 (claiming COREAS will be tarred by evidence of others' more serious actions); Dkt. No. 195 at 5 (referring to throwing flammable objects as "far graver"); Dkt. No. 196 at 4 (referring to the attempted arson as the "most inflammatory").)  This is speculative and unconvincing. Reviewing the video shows that all acts occurred within a quite limited period of time, therefore assuming the time spent on flammable debris will be so disproportionate to the time that makes-up those acts to be unfairly prejudicial is purely speculative and can be objected to in trial.  If the government focuses only on the arson acts and fails to present evidence of these defendants' own actions, that would require acquittal.  The nature of the acts make it easy for the jury to compartmentalize, exactly the way they must to determine guilt.  See Vasquez-Velasco, 15 F.3d at 846.  In a far more complex case, involving multiple conspiracies, the Ninth Circuit has still found juries able to effectively compartmentalize and understand the distinctions.  United States v. Fernandez, 388 F.3d 1199, 1242-43 (9th Cir. 2004).  Certainly, the even more simple charges here than were at play in Fernandez are "well within the ability of the ordinary juror to understand."  (Id. at 1244.)

Further, defendant COREAS claims prejudice from statements by other defendants -- none of which inculpate COREAS directly, nor does

COREAS even quote to demonstrate prejudice.  (Dkt. No. 194 at 6.) While COREAS is not accused of attempting to burn the vehicles, he is shown throwing a large rock over the same spot at the very same vehicles.  Also, the fact that COREAS undertook his actions after joining and moving around with a large crowd that was repeatedly espousing anti-law enforcement beliefs before COREAS climbed on a sign and threw a large rock at a law enforcement vehicle feet away from officers trying to stay hidden so as to no be hit by rocks is relevant context to ascertain that he intended to obstruct, impede, or interfere with those officers.  Further, a limiting instruction about the use of any such evidence is more than sufficient to mitigate the prejudice.  See Zafiro v. United States, 506 U.S. 534, 539 (1993) (a limiting instruction "often will suffice to cure any risk of prejudice") citing Richardson v. Marsh, 481 U.S. 200, 211 (1987).  A limiting instruction, if even necessary is certainly sufficient where defendant only makes general claims of "profane and anti-law enforcement" rhetoric, without any explanation as to why this may be so inflammatory, especially given the current climate, that it would blind the jury to the legal instructions the Court provides.  Plainly, the defendants have failed to show a violation of one of their substantive rights by reason of the joint trial, such that "the prejudice [would be of] such magnitude that the defendant [is] denied a fair trial" as required by the Ninth Circuit. Escalante, 637 F.2d at 1201.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendants motions for severance in their entirety.

17

Certificate of Compliance

The undersigned, counsel of record for Plaintiff United States of America, certifies that this brief contains 4,424 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 20, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

_____ /s/ *Jenna W. Long* _____
JENNA W. LONG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

18