**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
Andrew S. Cowan (SBN: 165435)
acowan@holmesathey.com
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
T: (213) 516-8055 / F: (213) 973-6282
*Attorney for Defendant Ronald Coreas*

**CURTIS V. LEFTWICH APLC**
Curtis V. Leftwich (SBN: 71630)
thedorsal@aol.com
18809 Los Alimos Street
Porter Ranch, California 91326-2746
T:  (818) 324-2091
*Attorney for Defendant Junior Roldan*

**TARGOWSKI LAW OFFICE**
John Targowski (SBN: 226053)
jtargo@icloud.com
475 Washington Blvd.
Marina Del Rey, California 90292
T: (310) 920-9177
*Attorney for Defendant Ismael Vega*

**LAW OFFICES OF DAVID R. EVANS**
David R. Evans (SBN: 89119)
drevanslaw@gmail.com
101 N. Verdugo Road, Suite 9320
Glendale, California 91226
T: (323) 257-5100 / F: (818) 617-2056
*Attorney for Defendant Stefano Green*

**LAW OFFICES OF KAREN L. GOLDSTEIN**
Karen L. Goldstein (SBN 229965)
Kgoldstein@klgcriminaldefense.com
1800 Vine Street
Los Angeles, CA 90028
T: (888) 445-6313 / F: (323) 467-7229
*Attorney for Defendant Balto Montion*

**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
Brendan Gilligan (SBN: 365069)
brendan_gilligan@fd.org
321 East 2nd Street
Los Angeles, California 90012
T: (213) 894-2854 / F: (213) 894-0081
*Attorney for Defendant Adam Palermo*

**LAW OFFICE OF WILLIAM HOVSEPYAN**
William Hovsepyan (SBN: 232483)
william@whdefenselaw.com
450 N. Brand Blvd., Suite 600
Glendale, California 91203
T: (818) 946-2497 / F: (818) 946-2447
*Attorney for Defendant Jesus Gonzalez-Hernandez, Jr.*

**LAW OFFICES OF KENNETH A. REED**
Kenneth A. Reed (SBN: 133567)
kenneth@kennethreedlaw.net
406 West 4th Street
Santa Ana, California 92701
T: (714) 953-7400 / F: (714) 953-7412
*Attorney for Defendant Yachua Flores*

**RICHARDS CARRINGTON LLC**
George B. Newhouse, Jr. (SBN: 107036)
george@richardscarrington.com
545 South Figueroa Street, 7th Floor
Los Angeles, California 90071
T: (213) 348-9016/ F: (213) 348-9017
*Attorney for Defendant Hector Ramos*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ADAM CHARLES PALERMO, ISMAEL VEGA, YACHUA | Case No. 25-CR-731(A)-JFW **DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION FOR RELIEF FROM IMPROPER JOINDER UNDER FED. R. CRIM. P. 8(b), 12(b)(3)(B)(iv) [ECF 193]** |

MAURICIO FLORES, RONALD ALEXIS COREAS, JESUS GONZALEZ-HERNANDEZ JR., STEFANO DEONG GREEN, BALTO MONTION, HECTOR DANIEL RAMOS, and JUNIOR ROLDAN,

Defendants.

Judge: Hon. John F. Walter
Courtroom: 7A

Trial Date:       6/9/2026
Hearing Date:  4/20/2026
Hearing Time: 8:00 AM

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...........................................................................................................5

II. ARGUMENT ...............................................................................................................6

    A.    Issues of Prejudice and Judicial Economy are Not Relevant to Determine the Propriety of Joinder Under Rule 8(b). ........................6

    B.    The Government Fails to Demonstrate that the "Separate Unrelated Acts" of Defendants Comprise the Same Act or Transaction, or Series of Acts or Transactions, Constituting the Offense. ....................................................................................................8

        1.    The Alleged Civil Disorder Does Not Establish a Single "Act or Transaction" Under Rule 8(b), Because it is Distinct from the Alleged Acts Constituting the Offense. ..............................................................................8

        2.    The Government Fails to Establish that Defendants Conspired, Aided and Abetted, or Acted Jointly With Each Other. ..............................................................................10

        3.    The "Separate Unrelated Acts" of Defendants do Not Comprise a Series of Acts or Transactions Because They are Not Logically Related to Each Other. ....................15

    C.    The Government Cannot Explain Away the Court's Prior Finding that the Individual Defendants Participated in "Separate Unrelated Acts." .............................................................18

III. CONCLUSION............................................................................................................19

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*United States v. Armstrong,* 621 F.2d 951 (9th Cir. 1980)........................................7

*United States v. Felix-Gutierrez*, 940 F.2d 1200 (9th Cir. 1991).......................7, 15

*United States v. Ford*, 632 F.2d 1354 (9th Cir. 1980)...........................................16

*United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007).........................................17

*United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981) ...........................................6

*United States v. Lopez,* 2024 WL 3823439 (D. Nev. 2024).............................17, 18

*United States v. Mogal,* 2019 WL 1102993 (N.D. Cal. 2019) ........................16, 17

*United States v. Rakow*, 2006 WL 8445944 (C.D. Cal. 2006).......................16, 17

*United States v. Sarkisian,* 197 F.3d 966 (9th Cir. 1999)...............................17, 18

*United States v. Vasquez-Velasco*, 15 F.3d 833 (9th Cir.1994) ............6, 15, 16, 18

*United States v. Wegers,* 2005 WL 3087856 (W.D. Wash. 2005*)* ...........................7

**STATUTES**

18 U.S.C. § 231...............................................................................................*passim*

18 U.S.C. § 232.........................................................................................................9

**RULES**

Fed. R. Crim. P. 14 .............................................................................................5, 6, 7

Fed. R. Crim. P. 8 ..............................................................................................*passim*

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

# I. INTRODUCTION

The government has filed a single Omnibus Opposition ("Opposition") to (1) Defendants' Joint Motion for Relief from Improper Joinder, brought under Fed. R. Crim. P. 8(b) [ECF 193]; and (2) individual motions to sever brought under Rule 14(a), filed by defendants Ronald Coreas [ECF 194], Hector Ramos [ECF 195], and Stefano Green [ECF 196].  **This Joint Reply responds solely to the government's arguments relating to improper joinder of defendants under Rule 8(b).**  As to their independently-filed Rule 14(a) severance motions, defendants Coreas, Ramos and Green have elected not to file reply briefs, and respectfully submit that issue to the Court based on the arguments made in their opening briefs.

The eight-page Argument section in the government's Opposition is devoid of structured sub-sections or corresponding headers. (Opp. at 10-17).  It meanders from topic to topic, conflating issues relevant to Rule 8 with those relevant only to Rule 14.  Whether inadvertently or by design, the end result obscures the legal standards that govern joinder under Rule 8(b)—the exclusive subject of this Joint Reply.

As set forth below, once the extraneous Rule 14 arguments are stripped away, it is clear that the government has failed to meet its burden of demonstrating that the defendants participated in the "same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," as required by Rule 8(b).  To the contrary, as the Court previously found, the Defendants instead participated in "separate unrelated acts of throwing rocks, debris, objects, or fire at California Highway Patrol cars from a freeway overpass on June 8, 2025."  See Order denying transfer of case to this Court in *United States v. Elmore Sylvester Cage*, Case No. 25-CR-923-JWH [ECF 75], attached as Exh. 1 to Joint Motion.  Such facts cannot justify joinder of Defendants under Rule 8(b).

The Court should therefore grant Defendants' Joint Motion.

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

## II. ARGUMENT

The evidence proffered by the government would fail to establish that Defendants jointly committed a single act that violated 18 U.S.C. § 231(a)(3), as charged in Count 7. It would only establish, as the Court has observed, that Defendants participated in "separate unrelated acts of throwing rocks, debris, objects, or fire." These "separate unrelated acts" do not constitute a "series of acts or transactions, constituting an offense or offenses" within the meaning of Rule 8(b). Joinder of the Defendants is therefore improper under the Rule and the Court must sever their trials from each other.

### A. Issues of Prejudice and Judicial Economy are Not Relevant to Determine the Propriety of Joinder Under Rule 8(b).

The government spends most of its unstructured Argument section talking about judicial economy (Opp. at 11-15) and prejudice (Opp. at 15-17). While these factors would be relevant to evaluating severance under Rule 14(a), they have no role in determining the issue before the Court: whether joinder is proper in the first place under Rule 8(b).

In relevant part, Rule 14(a) states that a Court may sever defendants for trial if the joinder of offenses or defendants in an indictment "appears to prejudice a defendant or the government." Rule 14(a) therefore explicitly designates prejudice as a factor to consider in evaluating severance. The Ninth Circuit has held that judicial economy is also a factor under Rule 14. *See, e.g., United States v. Kenny*, 645 F.2d 1323, 1345 (9th Cir. 1981).

By contrast, Rule 8(b) does not mention prejudice. It instead requires a trial court to determine whether the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." *See* Rule 8(b). This in turn requires the Court, under Ninth Circuit law, to determine whether the acts or transactions are "logically related." *United States v. Vasquez-Velasco*, 15 F.3d 833, 843 (9th Cir.1994), *citing United*

*States v. Felix-Gutierrez*, 940 F.2d 1200, 1208 (9th Cir. 1991).  The inquiry under Rule 8, in contrast to Rule 14, therefore involves no balancing test and no consideration of prejudice or judicial economy.  *See United States v. Wegers,* 2005 WL 3087856, at *1 (W.D. Wash. 2005*)* ("The question under Rule 8(a) is *not* whether a joint trial would work prejudice, but whether the government had any business joining the disparate counts in the same indictment.").

The government misleadingly cites *United States v. Armstrong,* 621 F.2d 951 (9th Cir. 1980) to suggest that a balancing act governs Rule 8(b) analysis—and that judicial economy is the dominant factor.  This badly misconstrues the holding in *Armstrong*, which weighed prejudice against judicial economy in the context of a Rule 14(a) analysis.  In *Armstrong*, a single-defendant case, Armstrong sought to have three bank robbery charges against him severed for trial.  *See Id.* at 953-54.  The Ninth Circuit, conducting a Rule 8 analysis, first found that joinder of the three offenses was proper because the robberies were "clearly part of the same transaction or series of transactions."  *Id.* at 954. The court next moved onto the Rule 14(a) analysis, weighing prejudice against judicial economy:

> We have held that joinder is the rule rather than the exception and that the burden is on the defendant in his appeal following denial of the motion to sever to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever.

*Id.*  The government quotes from this passage (Opp. at 8-9) to suggest that this is the test the Court should apply to the threshold Rule 8 determination in this case.  It is not.  Defendants do not contend under Rule 14(a) that they were prejudiced by improper joinder.  They instead contend under Rule 8(b) that joinder was improper in the first place.

The Court should therefore reject the government's misleading reliance on *Armstrong* and focus solely on the dispositive question under Rule 8(b):  whether the government  has met its burden of showing that the defendants participated in the

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

"same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Rule 8(b).  The answer to that question is no, for the reasons set forth in the following section.

### B.   The Government Fails to Demonstrate that the "Separate Unrelated Acts" of Defendants Comprise the Same Act or Transaction, or Series of Acts or Transactions, Constituting the Offense.

The evidence proffered by the government confirms what Defendants argued in their Joint Motion: that the acts each defendant allegedly performed were independent, even if other defendants were nearby during the act.  No causal connection exists between these individual acts; proof of each defendant's *actus reus* would thus rely on evidence unique to that defendant.  Joinder is therefore improper under Rule 8(b).

### 1.   The Alleged Civil Disorder Does Not Establish a Single "Act or Transaction" Under Rule 8(b), Because it is Distinct from the Alleged Acts Constituting the Offense.

The government argues that because the Defendants allegedly participated in the same civil disorder, they participated in the same act or transaction.  *See* Govt. Opp. at 3 ("this civil disorder encompassing the charged conduct—at a single overpass of the United States Highway 101—was distinct in time and location"); *Id.* at 11 ("The civil disorder that defendants acted within is arguably a transaction").  This argument, however, is contrary to the language of the operative statute, 18 U.S.C. § 231(a)(3), as well as the charging language of Count 7—both of which make clear that the alleged acts of Defendants are *distinct* from the civil disorder.  Under the plain language of the statute, the civil disorder is not an alleged "act" committed by a defendant, and therefore cannot serve as the basis for Rule 8(b) joinder.

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

The Defendants have been charged in Count 7 with violating 18 U.S.C. § 231(a)(3), which provides as follows:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—Shall be fined under this title or imprisoned not more than five years, or both.

(emphases added). The *actus reus* is plain: a defendant must commit, or attempt to commit, an act to obstruct, impede or interfere with a law enforcement officer. The other elements of the offense are conditions that must exist—conditions precedent—not within the control of defendant (and of which the defendant need have knowledge). Specifically, (1) the officer must be engaged in official duties; which (2) must be incident to and during the commission of a civil disorder; which (3) obstructs, delays or adversely affects commerce, or the movement of any article through it, or performance of any federally protected activity. The required "civil disorder" is therefore an element separate from the element of *actus reus—i.e.* the knowing act of obstruction or attempted obstruction.

Count 7 tracks the statutory language, and preserves the distinction between the act and the condition precedent of an existing civil disorder:

> [Defendants] knowingly and intentionally committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, California Highway Patrol officers, lawfully engaged in the lawful performance of their official duties, incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and performance of any federally protected function.

*See* FSI, Count 7. Section 232(a) defines "civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any

other individual."  One can therefore act incident to a civil disorder without obstructing law enforcement in violation of § 231(a)(3)—for example by setting a trash can on fire or spraying graffiti on a wall.  Conversely, one can act to obstruct law enforcement without resorting to "acts of violence" and thereby creating a "civil disorder," for example, by taking nonviolent or passive acts to interfere with law enforcement.

The Court should therefore reject the government's suggestion that the civil disorder itself establishes a single act or single transaction in which all defendants participated.  To the contrary, the Rule 8 analysis must instead focus on the *actus reus*—the knowing act that each Defendant allegedly took to obstruct, impede, or interfere with a law enforcement officer.

### 2. The Government Fails to Establish that Defendants Conspired, Aided and Abetted, or Acted Jointly With Each Other.

Most of the government's Statement of Facts is devoted to establishing that the Defendants were in physical proximity to each other during an 85-minute time period.  *See* Opp. at 3-8.  Defendants concede that the video evidence will show that, on several occasions, a particular defendant was standing near another defendant.  But this incidental proximity fails to establish that all of the Defendants acted jointly, or that they all aided and abetted each other, as charged in Count 7.

The government fails to describe even one instance in which two defendants acted jointly or aided and abetted each other.  Aiding and abetting is a specific intent theory of liability which requires that a defendant specifically intended to aid, counsel, command, induce or procure one of the other charged defendants in committing a crime.  *See* Ninth Cir. Model Crim. Jury Instr. No. 4.1.  The government can point only to one incident that could qualify as an act of aiding and abetting:  when defendant Green "is seen bracing the leg of an unidentified individual throwing a sign over the overpass."  Opp. at 6.  But this mystery man was never charged, and the government proffers no evidence that Green aided and abetted any

Holmes, Athey, Cowan & Mermelstein LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

other charged defendant.

The alleged individual acts of obstructing, impeding or interfering with law enforcement took merely an instant:  the time that it took to hurl an object in the direction of CHP officers or their vehicles.  The government has failed to show that, in that instant or the moment before it, that any defendant other than the thrower participated in the act.  The evidence described by the government falls short as to each and every individual defendant, as detailed below.

**Defendant Gonzalez-Hernandez:**  The evidence cited by the government would only establish that Gonzalez-Hernandez was present on Aliso Street, on the block between Main Street and Los Angeles Street, for ten minutes, from 6:40 PM to 6:50 PM.  The evidence fails to establish that he performed an act with any other defendant or aided or abetted them in any way to obstruct, impede or interfere a law enforcement officer.  Indeed, the proffered evidence does not establish that Gonzalez-Hernandez interacted with any of the other defendants at all.  At most, it shows that he and defendant Ramos were both present on the same block for about five minutes.  The government points to no temporal or physical proximity between Gonzalez-Hernandez and any other defendant.  His actions were his and his alone.

**Defendant Ramos:**  As to Hector Ramos, the proffered evidence is similar to that concerning Gonzalez-Hernandez—and every bit as lacking.  According to the government, Ramos was photographed standing on Aliso Street, on the block between Main Street and Los Angeles Street, between 6:35 PM and 6:45 PM.  The government proffers no evidence that Ramos violated § 231(a)(3) jointly with any other defendant, nor does it cite any evidence of him aiding or abetting anyone to violate the statute.  Ramos simply threw a plastic object by himself.  The proffered evidence fails to establish that Ramos even interacted with any of the other defendants in any way.  At most, it shows that he and defendant Gonzalez-Hernandez were both present on the same city block for about five minutes.  The government points to no temporal or physical proximity between Ramos and any other defendant.

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

His actions, like those of Gonzalez-Hernandez, were his and his alone.

**Defendant Montion:**  The government's narrative summary mentions Balto Montion only once:  "Within twenty minutes or so before lit debris was thrown, GREEN, MONTION, ROLDAN, and COREAS were all around and behind the sign of the overpass, each throwing at least one rock over the railing towards the vehicles and officers below." Gov. Opp. 6:14-15. The evidence proffered by the government would only establish that Montion was at or near the overpass between 6:35 PM and 7:10 PM—a time frame that ended at least 10 minutes before Green, Roldan, and Coreas were allegedly in that area (at 7:20-7:30 PM).  Moreover, the proffered evidence excludes the possibility that Montion was present when defendants Vega and Flores allegedly arrived (at least 20 minutes afterwards) and supposedly threw debris or flammable liquid from the overpass. Opp. at 6.

The allegation that Montion threw a rock from the same area as Green, Roldan and Coreas during the same 10-minute window is woefully inadequate to prove any type of joint action, or intent, or aiding and abetting.  Even the government's written summary, which individually discusses each defendant and the actions he allegedly took, fails to describe any joint action by Montion.  The evidence proffered by the government does not establish that Montion knew any of the other defendants, communicated with any of them, or acted jointly with any other defendant.  The evidence indicates that he took only individual actions.

**Defendant Green:**  The evidence cited by the government, at most, would only establish that Green aided and abetted an unknown, uncharged individual in "throwing a sign over the overpass" by "bracing" that man's leg.  Opp. at 6:19-20. This is a red herring—what matters for joinder purposes matters is whether Green aided and abetted any co-defendant, not a mystery man whom the government never charged.  And the government proffers no evidence to show this ever happened— despite charging Green in Count 7 with aiding and abetting all of his co-defendants. The government therefore fails to establish that Green took any action with the intent

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

to "aid, counsel, command, induce or procure" any charged defendant in a violation of § 231(a)(3). Again, the proffered evidence merely points to individual acts.

**Defendants Coreas and Roldan:** The government's narrative summary mentions alleged acts of obstructing law enforcement by defendants Coreas and Roldan only once: that between 7:20 PM and 7:30 PM, both were "all around and behind the sign of the overpass, each throwing at least one rock over the railing." Gov. Opp. 6:14-18. The government asserts that defendants Green and Montion too were in that area at some point in that 10-minute window, and that each threw at least one rock. *Id.*

At most, this proffered evidence establishes only that these four defendants were in roughly the same area for some portion of the 10-minute window, and that each threw at least a rock. Throwing a rock is a quintessentially individual act, even if somebody nearby is doing the same thing. Moreover, the government does not proffer evidence that defendants Coreas and Roldan aided and abetted each other, or any other defendant, in throwing a rock (for example, by handing the rock to the thrower).

Apart from alleging that Green and Montion were nearby, the government fails to proffer any evidence that associates the alleged conduct of Coreas and Roldan with any other defendant. The best the government can do is offer a feeble argument that Coreas and Roldan were on the overpass approximately 20 minutes before defendants Flores and Vega allegedly threw burning debris and liquid. The government makes no effort to explain how this much later event bears any causal relationship to anything that Coreas and Roldan allegedly did. It is a ham-fisted attempt at guilt-by-association, and certainly does not establish aiding and abetting by either man. The government similarly does not point to any action by Coreas that aided and abetted Roldan, or vice-versa.

**Defendants Palermo, Vega & Flores:** The evidence cited by the government would only establish that Vega and Palermo were on the freeway overpass at roughly

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

the same time for a few minutes. It would not establish that the two of them acted together, or aided and abetted each other. According to the government, Vega approached Palermo as Palermo lit debris and tossed it over the railing. Opp. at 4. Next, both of them supposedly joined a "circle of people around debris, like cardboard, that is lit and thrown at different times." *Id.* "Less than five minutes later," according to the government, Vega allegedly took the same action as Palermo had taken and "throws lit cardboard over." The government does not allege that any other co-defendants were present at the time.

Ten minutes afterwards, Vega allegedly pointed a finger while defendant Flores poured a liquid onto a burning vehicle. *Id.* at 6.

The proffered evidence does not demonstrate that any of these defendants committed a given act together, or that they aided and abetted each other. The most the evidence might establish is that the three were in the same area within a 15-minute period, and individually threw burning objects or liquid accelerant from the overpass. Such evidence would fall short of establishing than any of them committed an act to "aid, counsel, command, induce or procure" any other defendant to commit a crime. Indeed, the government does not proffer evidence that Palermo, Vega and Flores **interacted** with each other in any way, however miniscule. The government offers no evidence of communications between the men, either electronic or verbal, whether they came to the area together, or left with each other. It offers nothing but a suspicion that somehow the action of one may have somehow influenced the action of the others.

In short, despite numerous videos that captured the actions of defendants Palermo, Vega and Flores that day, the government fails to establish planned or coordinated conduct among them. Whatever acts each of these defendants may have taken were individual acts.

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

As demonstrated above, the government's proffered evidence does not establish that all of the Defendants participated in the same act or transaction, or that they all aided and abetted each other as charged in Count 7. To the contrary, the evidence is consistent with the Court's finding that these were "separate unrelated acts." The government cites no Ninth Circuit authority in which joinder of defendants was found to be proper under the factual circumstances discussed above. The government relies principally on *United v. Vasquez-Velasco*, 15 F.3d 833, 838 (9th Cir. 1994), but that in case the defendants had been charged with belonging to a racketeering enterprise and committing violent crimes with the intention of maintaining and increasing their positions in the cartel. In the instant case, by contrast, the government has not alleged that the Defendants were members of an organization—or that they organized themselves in advance. They likely had different motives as well, such as anger/fear from ICE raids in local neighborhoods, ethnic pride from an immigrant population being heavily targeted, bad personal experiences with ICE raids, deportations, or the police, or simply general defiance and dissatisfaction with the government.

### 3. The "Separate Unrelated Acts" of Defendants do Not Comprise a Series of Acts or Transactions Because They are Not Logically Related to Each Other.

The government next argues that "the many violent acts" allegedly committed by Defendants in the vicinity of the 101 freeway, within 90 minutes of each other, "constitute a series of acts or transactions contemplated by the Rule." Opp. at 11. This argument fails because the evidence proffered by the government fails to satisfy the Ninth Circuit's test for a "series of acts or transactions"—specifically, that there is a "logical relationship" between the acts or transactions. *United States v. Vasquez-Velasco*, 15 F.3d 833, 843 (9th Cir.1994), *citing United States v. Felix-Gutierrez*, 940 F.2d 1200, 1208 (9th Cir. 1991).

Although the "logical relationship" inquiry is critical to determining whether joinder of the Defendants is proper under Rule 8(b), the government gives it short

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

shrift, devoting merely a half-page to it. *See* Opp. at 10-11. That brief discussion floats several reasons why Defendants' separated unrelated acts comprise a single series under Rule 8(b). The crux of the government's argument is not a model of clarity:

> The logical relationship between defendants' conduct is plain from Count 7. Each defendant was part of the same violent crowd that attacked the same California Highway Patrol officers or vehicles, at the same time, motivated by common purpose. And each defendant directly acted, attempted to act, or aided or abetted the actions of others. The requirement under Rule 8(b) that joined defendants engage in the same transaction, or series, of acts or transactions is satisfied **because all the charged conduct was within this one incident, acts fueled by one another, evinced of a large group acting with common purpose.**

Opp. at 10-11 (emphasis added). None of these rationales, however, satisfy the "logical relationship" test, as explained below.

The government argues that a "logical relationship" exists between Defendants' individual acts because Defendants were part of the same crowd, which attacked the same CHP officers/vehicles, at the same time. But a logical relationship may **not** be established merely through physical proximity of defendants or "'a mere showing that the events occurred at about the same time, or that the acts violated the same statutes' or 'a mere similarity in the manner in which several offenses are carried out' (i.e. the 'modus operandi')." *United States v. Mogal,* 2019 WL 1102993, at *3 (N.D. Cal. 2019) (*quoting United States v. Satterfield*, 548 F.2d 1341, 1344, 1345 (9th Cir. 1977)). "The mere fact that similar events underlie the offenses is not a sufficient basis for joinder." *United States v. Rakow*, 2006 WL 8445944, at *2 (C.D. Cal. 2006), *citing Vasquez-Velasco*, F.3d at 843 and *United States v. Ford*, 632 F.2d 1354, 1372 (9th Cir. 1980).

As discussed *supra* in § II.B.2, the government's proffered evidence would only show that some of the Defendants were physically near one or two other defendants from time to time. The government cites no evidence to support its

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

repeated claims that the Defendants acted "in concert" or, similarly, that their actions demonstrated an unspecified "common purpose" (that the government never defines). *See* Opp. at 7:21, 13:15-18 ("in concert"); 11:1,7; 13:16 ("common purpose"). The government's argument fails because, as *Mogal, Satterfield* and *Rakow* teach, mere similarity of modus operandi, or criminal intent, only establishes the *similarity* of the separate acts—not a logical relationship between them. The government does not acknowledge these authorities, which Defendants had discussed prominently in their opening brief. *See* Joint Motion at 14, 16, 18. Rather than attempt to distinguish these controlling authorities, the government simply ignores them.

There are several recognized ways to establish a "logical relationship" under Ninth Circuit case law. For example, the government may demonstrate the existence of a "common plan, scheme, or conspiracy." *See United States v. Sarkisian,* 197 F.3d 966, 975-76 (9th Cir. 1999). The government has conceded that this rationale does not apply in the instant case, where a conspiracy was not charged, and where the Defendants independently arrived downtown without any advance planning. *See* Opp. at 11.

A logical relationship may also be shown where "one criminal activity naturally flows from separate criminal conduct." *Sarkisian*, 197 F.3d at 976. In evaluating this factor, courts "ask whether the commission of one of the offenses either depended upon or necessarily led to the commission of the other; proof of one act either constituted or depended upon proof of the other." *United States v. Lopez,* 2024 WL 3823439, at *4 (D. Nev. 2024), *quoting United States v. Jawara*, 474 F.3d 565, 574 (9th Cir. 2007). The government cannot meet this standard either. If Defendant A threw a rock, it did not **necessarily lead** to Defendant B throwing his own rock. Conversely, if Defendant B threw a rock, his act did not **depend** on Defendant A throwing a rock first. The government argues that Defendants' individual acts were somehow "fueled by one another" (Opp. at 11)—but whatever "fueled by" may mean, is not the standard endorsed by the Ninth Circuit or any other

court of appeal.  It certainly falls short of the "but-for" standard implicit in *Sarkisian* and *Lopez.* And even if one defendant's act inspired a nearby defendant to do the same, that is not enough. "Monkey See, Monkey Do" is not the standard here.

Finally, a logical relationship may be shown where "the common activity constitutes a substantial portion of the proof of the joined charges." *United States v. Sarkisian,* 197 F.3d 966, 975-76 (9th Cir. 1999) (*citing Vasquez-Velasco*, 15 F.3d at 844).  The government has not made this argument, presumably because it cannot cite any meaningful amount of "common activity" by the Defendants—who did not coordinate their actions in advance and were only in occasional and incidental contact while downtown.  As the government acknowledges, it must prove the act that each defendant committed with evidence "unique" to that defendant.  Opp. at 13-14.  This is not a case in which the proof of a single act will implicate multiple defendants.

### C.  <u>The Government Cannot Explain Away the Court's Prior Finding that the Individual Defendants Participated in "Separate Unrelated Acts."</u>

The Government attempts to wave off the Court's prior finding that this case involves **"individual defendants who are apparently unrelated except for their participation in separate unrelated acts of throwing rocks, debris, objects, or fire at California Highway Patrol cars from a freeway overpass."** *See* Exh. 1 to Joint Motion.  It audaciously argues that the Court's Order Denying Transfer "supports the government's position." Opp. at 15.  Regardless of whether this astonishing claim, like the government's Notice of Related Case, "borders on the nonsensical" (*see* Exh. 1 to Joint Motion), the government fails to mention—let alone analyze or distinguish—the significance of the Court's language.  This failure too is astonishing, given that the Order was the sole exhibit to the Joint Motion, and that Defendants  relied on it extensively.  *See* Joint Motion at 8, 9, 12, 15, 16.  However, as with the Rule 8 precedents that the government similarly ignored (*see* discussion *supra* § II.B.3), pretending an inconvenient authority does not exist hardly makes it

**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

disappear.

The government's brief argument here is convoluted and difficult to follow. The gist seems to be that that the earlier *Cage* case, which the government had tried to low-number to this Court, was in fact **unrelated** to the instant, earlier-filed *Palermo* case because it involved LAPD officers instead of CHP officers.[1] And this fact . . . somehow proves that the individual acts of the *Palermo* Defendants are sufficiently related to justify joinder? This mystifying argument elides the Court's findings and does not provide a basis for joinder under Rule 8(b). Based on the Court's prior findings—which the government has yet to acknowledge—such joinder is clearly improper.

## III. CONCLUSION

For the foregoing reasons, and for those set forth in the Joint Motion, the Court should grant Defendants' request for severance. The government has violated Rule 8(b) by improperly joining Defendants in the FSI and the Court must grant relief by ordering a separate trial for each defendant. In the alternative, the Court should dismiss the FSI.

**RESPECTFULLY SUBMITTED,**

**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**

DATED: 3/24/2026     By:     */s/ Andrew S. Cowan*
                                      Andrew S. Cowan
                                      Attorney for Defendant Ronald Coreas

**OFFICE OF THE FEDERAL PUBLIC DEFENDER**

DATED: 3/24/2026     By:     */s/ Brendan Gilligan*
                                      Brendan Gilligan
                                      Attorney for Defendant Adam Palermo

---

[1] This naturally begs the question of why the government filed a Notice of Related Case for an unrelated case in the first place.

**TARGOWSKI LAW OFFICE**

DATED: 3/24/2026          By:    */s/ John Targowski*
                                 John Targowski
                                 Attorney for Defendant Ismael Vega

**LAW OFFICES OF KENNETH A. REED**

DATED: 3/24/2026          By:    */s/ Kenneth A. Reed*
                                 Kenneth A. Reed
                                 Attorney for Defendant Yachua Flores

**LAW OFFICE OF WILLIAM HOVSEPYAN**

DATED: 3/24/2026          By:    */s/ William Hovsepyan*
                                 William Hovsepyan
                                 Attorney for Defendant Jesus Gonzalez-Hernandez

**LAW OFFICES OF DAVID R. EVANS**

DATED: 3/24/2026          By:    */s/ David R. Evans*
                                 David R. Evans
                                 Attorney for Defendant Stefano Deong Green

**RICHARDS CARRINGTON LLC**

DATED: 3/24/2026          By:    */s/ George B. Newhouse, Jr.*
                                 George B. Newhouse, Jr.
                                 Attorney for Defendant Hector Daniel Ramos

**CURTIS V. LEFTWICH APLC**

DATED: 3/24/2026          By:    */s/ Curtis V. Leftwich*
                                 Curtis V. Leftwich
                                 Attorney for Defendant Junior Roldan

**LAW OFFICES OF KAREN L. GOLDSTEIN**

DATED: 3/24/2026          By:    */s/ Karen L. Goldstein*
                                 Karen L. Goldstein
                                 Attorney for Defendant Balto Montion

**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Ronald Coreas, certifies that this brief contains 4,907 words, which complies with the word limit of L.R. 11-6.1.

**RESPECTFULLY SUBMITTED,**

**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**

DATED: 3/24/2026      By:    _/s/ Andrew S. Cowan_

§   Andrew S. Cowan
Attorney for Defendant Ronald Coreas

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017